Louis H. WISSMANN,
Plaintiff-Respondent,

v.

GERMAN EVANGELICAL ST. MARCUS
CONGREGATION OF ST. LOUIS,
Defendant-Appellant.

No. 40408.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 22, 1980.

Motion for Rehearing or Transfer to Supreme Court Denied March 14, 1980.

Application to Transfer Denied
May 1, 1980.

Cook & Murphy, Stephen C. Murphy, Clayton, for plaintiff-respondent.

Melville A. Ochsner, St. Louis, for defendant-appellant.

SIMON, Judge.

Plaintiff Louis H. Wissmann, a real estate broker, sued defendant German Evangelical St. Marcus Congregation of St. Louis (St. Marcus) to recover a real estate commission. St. Marcus counterclaimed for malicious prosecution. Both parties filed motions for summary judgment. Wissmann's motion was granted, and necessarily, the St. Marcus motion was denied. From that order, St. Marcus appeals. Judgment is affirmed.

St. Marcus owned a cemetery in the City of St. Louis known as "Old St. Marcus Cemetery" whose operation was entrusted to a cemetery board. In November, 1956, the parties executed a listing contract in which Wissmann was appointed the exclusive agent to negotiate and to enter a contract of sale with a purchaser of the cemetery. The listing agreement contained five conditions precedent to the sale, including merchantable title by St. Marcus as insured by a title company, a valid ordinance of the City of St. Louis condemning or vacating the cemetery or otherwise allowing St. Marcus to abandon it, a valid ordinance rezoning the cemetery for the use of the purchaser, disposal of all causes of action against St. Marcus and the removal of the bodies and tombstones in the cemetery and reinterment completed elsewhere. The listing contract provided that Wissmann would receive as a commission one-half of the net proceeds of the sale or five per cent of the gross sales price if there were no net proceeds. Additionally, the agreement contained a separate provision that if the sale is not completed "through any fault or action" of St. Marcus, then Wissmann was entitled to five per cent of the gross sale price of any bona fide offer. The listing agreement was later amended in aspects not material to the appeal, and the earlier agreement was ratified and affirmed in all material respects. In May, 1957, the Title Insurance Corporation of St. Louis issued a title certificate showing fee simple title in the cemetery parcel in St. Marcus.

In July, 1961, Wissmann procured an offer from Frederick O. Whaley for $760,000 which was accepted by St. Marcus and embodied in a duly executed sale contract and Whaley deposited $75,000 in escrow as earnest money in accordance therewith. Shortly thereafter, Whaley obtained the necessary financing commitments. The sale contract contained several contingencies, in which St. Marcus agreed to remove all graves, bodies, vaults, mausoleums and monuments, to hold Whaley harmless for any loss he may suffer by said removal, to furnish a title insured by the Title Insurance Corporation of St. Louis and to remove the aforesaid items on the front ten acres within eight months after a favorable rezoning. In the event the removal did not occur within those eight months, Whaley was entitled to the release of the earnest money or to a portion of damages received by St. Marcus under the performance bond to be given by the contractor for removal of the bodies and tombstones.

In April, 1962 to accomplish abandonment of the cemetery, St. Marcus filed an equitable action in the Circuit Court, captioned *The German Evangelical St. Marcus Congregation v. Archambault*, seeking a declaration that the cemetery was a nuisance and an order authorizing removal of the bodies and markers. Archambault and other defendants were owners of burial lots in the cemetery. While the action was pending and prior to trial, Ordinance 51427 was enacted by the City of St. Louis whereby the cemetery was withdrawn from the City's list of authorized burial sites. The trial court granted the relief sought and the defendants appealed. The Missouri Supreme Court reversed at 383 S.W.2d 704 (Mo.1964) holding that the abandonment of the cemetery and removal of the bodies was a matter for the legislative authority of the City of St. Louis and not for the trial court. Though Ordinance 51427 terminated the right to make further burials, such legislative action did not accomplish abandonment of the cemetery.

Thereafter, on July 6, 1965, the City of St. Louis enacted Ordinance 53572[1] which declared the cemetery a public nuisance and ordered removal of the bodies by January 1, 1966. On July 14, 1965, perpetual and nonperpetual lot owners in the cemetery filed

---

1. Ordinance 53572 provides:

Section One. The German Evangelical St. Marcus Congregation of St. Louis, a corporation, is hereby ordered, directed and required to remove all bodies from Old St. Marcus Cemetery on or before the 1st day of January, 1966, as such cemetery constitutes a menace and is detrimental to the public health, safety and welfare of the residents of the City of St. Louis, and is hereby declared to be a nuisance in accordance with Chapter 535, Revised Code of St. Louis.

an action against St. Marcus, the City of St. Louis and the Attorney General of the State of Missouri, captioned *Hillig v. City of St. Louis,* seeking a declaration that Ordinances 51427 and 53572 were null and void and seeking to enjoin their enforcement. The course of this lawsuit will be discussed *infra.*

While St. Marcus was engaged in litigation, first in the *Archambault* case and subsequently in the *Hillig* case, other events occurred toward fulfillment of the contingencies of the sale contract. On July 5, 1962, the Board of Public Service of the City of St. Louis issued a permit to Kingshighway-Gravois Development Company, owned by Frederick O. Whaley, to develop dwelling units and a shopping plaza on the cemetery site. As a result of the issuance of the permit, dwelling units and a shopping plaza could be built on the cemetery site without the necessity of an ordinance rezoning the site, in conformity with the Community Unit Plan provision of Section 915.050, Revised Code, City of St. Louis. In April, 1964, St. Marcus entered into a contract with Ludie L. and Emerson A. Meggs for the removal of the bodies and tombstones. After the *Hillig* action was filed, St. Marcus entered into a second contract with Meggs which was contingent on the finding that Ordinances 51427 and 53572 "be not declared to be invalid." Removal of the bodies was not accomplished. In 1972, Ordinances 51427 and 53572 were repealed. Further, on March 21, 1975, fourteen years after the sale contract was executed and pursuant to its terms, Whaley withdrew the earnest money ($75,000) previously held in escrow and the sale was never completed.[2]

On appeal St. Marcus contends that the trial court erred in entering summary judgment for Wissmann because a genuine issue of a material fact existed in that the question whether St. Marcus was at fault for failing to remove the bodies, gravesites and tombstones from the cemetery was a matter for the jury.

The trial court's action in granting a motion for summary judgment is reviewed in the light most favorable to the party against whom the judgment is rendered, in this case, St. Marcus. V.A.M.R. Civil Rule 74.04(c); *Seliga Shoe Stores Inc. v. City of Maplewood,* 558 S.W.2d 328 (Mo.App.1977). St. Marcus contends there was doubt as to a material fact, that is, a finding by the trial court from the pleadings, exhibits, admissions, affidavits, that St. Marcus "drug its feet in the *Hillig* suit." A "genuine issue of fact" precluding summary judgment exists whenever there is the slightest doubt as to the facts. *Seliga Shoe Stores Inc. v. City of Maplewood, supra.*

St. Marcus contends that in the five and one-half months that Ordinance 53572 was in force, St. Marcus was prevented from performing due to the pendency of the *Hillig* case. First, Ordinance 53572, *supra,* did not expire on January 1, 1966 but continued in full force and effect until repealed. January 1, 1966 was not an expiration date, but a date by which St. Marcus was to remove the bodies and tombstones or be subjected to penalty for failure to perform the mandate of the ordinance. Secondly, in the *Hillig* suit, no temporary restraining order, temporary injunction or permanent injunction had been issued. No hearing to show cause was ever held, although an order to show cause why a temporary injunction should not be issued was entered on the day the *Hillig* case was filed. The date for hearing on the order to show cause was continued three times, twice with the consent of St. Marcus. St. Marcus filed several motions to dismiss the three amended petitions filed by Hillig plaintiffs, but on one occasion the hearing on a motion was reset because counsel for St. Marcus failed to appear. When the cause had been pending over one year, a default and inquiry was entered against St. Marcus which was set aside. Six years after the suit was filed, St. Marcus had not yet filed an answer, and the record does not indicate that an answer

---

2. Wissmann sued on the theory that the sale was not completed due to St. Marcus' fault or action in failing to perform, that is, to accomplish the removal of the bodies and tombstones, a contingency in the sale contract.

was ever filed. The history of the *Hillig* case reveals a course of dilatory conduct by all parties. It also reveals that St. Marcus was never prevented by judicial decree, order or injunction from removing the bodies and tombstones in accordance with the ordinance. The record does not reveal any doubt as to the material fact raised by St. Marcus.

■ The law is well established in Missouri that if a party under a contract charges himself with an obligation possible of performance, he must make good, unless his performance is rendered impossible by an "act of God", the law or the other party. *MFA Mutual Insurance Company v. Farmers and Merchants Insurance Company*, 443 S.W.2d 220 (Mo.App.1969). The record reveals that St. Marcus' performance was not rendered impossible by the *Hillig* case, by the date contained in Ordinance 53572, or by Whaley.

■ St. Marcus raised three other points on appeal. However, these points must be dismissed for failure to comply with Rule 84.04(d). The requirements of the Rule are mandatory and must be strictly applied. *Martin v. Circuit Court of City of St. Louis*, 580 S.W.2d 307 (Mo.App.1978). Points Relied On II and IV of appellant's brief are abstract statements of law and do not state what actions or rulings of the trial court are sought to be reviewed and wherein and why they are claimed to be erroneous. Point Relied On V fails to state "wherein and why" the trial court erred in holding that Wissmann was entitled to a commission. Therefore, these Points Relied On are not reviewable. See *Thummel v. King*, 570 S.W.2d 679 (Mo.banc 1978).

St. Marcus filed a "petition to enlarge jurisdictional statement" seeking to return the cause to the Circuit Court. This petition was treated as a motion taken with the case and is now denied. In light of this court's decision affirming the judgment of the Circuit Court, no purpose or need will be served by remand.

■ Wissmann filed a motion to assess damages for frivolous appeal which was also taken with the case. Our review of the record reveals no showing of bad faith by St. Marcus in taking this appeal to justify such action, and accordingly, the motion is denied. *Burks v. Beebe*, 578 S.W.2d 298, 299 (Mo.App.1979).

In view of the conclusion we have reached, it is unnecessary to review other matters sought to be raised by the parties.

Judgment is affirmed.

STEWART, P. J., and SNYDER, J., concur.